LILLIE A. KEEPERS, PLAINTIFF IN ERROR, v. THE FIDELITY TITLE AND DEPOSIT COMPANY, DEFENDANT IN ERROR.

1. The plaintiff's sister, on her deathbed, delivered to the plaintiff the key of a box, saying, "I give you the box and all it contains." The box was in another room of the house, locked in a closet, the key of which was in possession of the plaintiff's mother, with whom the sister lived. The plaintiff lived elsewhere, and, during her sister's

life, made no attempt to take possession of the box. *Held,* that there was no such delivery of securities contained in the box as is essential to a valid *donatio mortis causa.*

2. A will directed that testator's property be divided equally between his daughters, each to come into possession of her share on arriving at the age of twenty-three years, and that, in case of the death of either before arriving at that age, her children should inherit the parent's share, but if no issue, then the survivor of the daughters should take the other's share. *Held,* that the will gave the survivor no right to the share of her sister, dying after she had reached the age of twenty-three years.

On error to the Supreme Court.

The plaintiff, Lillie A. Keepers, brought two suits in the Supreme Court against the Fidelity Title and Deposit Company, one an action on contract, to recover $418.22, the balance of $970, which had been deposited in the Howard Savings Institution by and in the name of Minnie I. Munn, and the other an action of replevin, to obtain possession of stock certificate No. 2459, for forty-one shares of the capital stock of the American Insurance Company, a bond made by the plaintiff to Minnie I. Munn for $1,000, and a bond made by John Bernreuther to James T. Van Ness for $400, which had been assigned to Minnie I. Munn.

On the trial of these suits in the Essex Circuit, it appeared that all the things in controversy had belonged to the plaintiff's sister, Minnie I. Munn, and the plaintiff testified that her sister, while upon her deathbed at home, a few hours before she lapsed into final unconsciousness, sent for the plaintiff, who lived elsewhere, and on the plaintiff's coming into the room the following incidents took place: "My sister turned to my mother and said 'to get those things for her;' my mother asked, 'What things?' and she replied, 'My things in the bureau;' my mother then brought to her from the bureau drawer a handkerchief containing some things, and then she asked my mother to leave the room, which she did; my sister then opened the handkerchief, and it contained some jewelry and a little bag; from the bag she took a tiny

key and said to me, 'You see that key;' I said, 'Yes;' and
she handed it to me and said, 'There, that key I have carried
in my bosom until it is rusty; it is the key of the box, and
that I give to you and all it contains;' then she took the
handkerchief, with the jewelry in it, and held the four cor-
ners of it up and passed it over to me, saying, 'There, I give
you these; I have no more use for them.'" It further
appeared that at that time the box which this key fitted was
in another room of the same house, locked in a closet of which
Miss Munn's mother had the key, and that the box contained
the savings bank book showing Miss Munn's deposit in the
Howard Savings Institution, the stock certificate and the two
bonds, besides many other papers, some of which did not
belong to Miss Munn. During Miss Munn's life the plaintiff
did not ask her mother for the key of the closet or make any
attempt to assume control over or take possession of the box
or its contents, nor did the box and contents ever come into
her possession, but they were taken by the defendant com-
pany as the administrator of Miss Munn.

On these facts the trial justice ruled that there was not
such a delivery of the things in controversy as was necessary
to make a valid *donatio mortis causa.*

The plaintiff also claimed that the stock of the American
Insurance Company and the Bernreuther bond had been the
property of her father, and on the death of her sister had
become hers by force of the following provision in her father's
will:

"*Item* 5. Subject to the foregoing uses and exceptions, I
give, devise and bequeath all my estate  *  *  * to my two
daughters, Lillie Alma and Minnie Ida, to be divided between
them equally, share and share alike, each one to come into
possession of her respective share upon arriving at the age of
twenty-three years, and not before; and in case of the decease
of said Lillie or Minnie before they are twenty-three years of
age, the children of said deceased shall inherit the parent's
share, but if there be no issue, then the survivor of the two
last-mentioned sisters shall take the other's share; and upon

each respectively arriving at the age of twenty one years, the interest of her share shall be paid to her direct."

Both sisters had passed the age of twenty-three years, and in the division of their father's estate the stock and bond had been transferred to Minnie as part of her share. She died unmarried.

The trial justice overruled this claim of the plaintiff.

Upon exception taken to these decisions, the present assignments of error are founded.

For the plaintiff in error, *Robert H. McCarter.*

For the defendant in error, *John J. Joyce.*

For the estate of Minnie I. Munn, *Riker & Riker.*

The opinion of the court was delivered by

DIXON, J. The first question for solution is whether the delivery of the key of a box containing valuable papers is sufficient delivery to constitute a valid *donatio mortis causa* of the papers, when the box is not in the presence or immediate control of the donor and does not pass into the actual possession of the donee during the lifetime of the donor.

The leading case on the subject of donations *mortis causa* is *Ward* v. *Turner,* 2 *Ves. Sr.* 431 (A. D. 1752), where Lord Chancellor Hardwicke laid down the rule, with reference to delivery, which has ever since formed the basis whereon such gifts are supported. After showing that the recognition of donations *mortis causa* by the common law was derived from the civil law, he declared that the civil law had been " received in England, in respect of such donations, only so far as attended with delivery, or what the civil law calls tradition ;" that " tradition or delivery is necessary to make a good donation *mortis causa.*" He further said : " It is argued that, though some delivery is necessary, yet delivery of the thing is not necessary, but delivery of anything by way of a symbol is sufficient ; but I cannot agree to that, nor do I find

any authority for that in the civil law, which required delivery in some gifts, or in the law of England, which required delivery throughout. Where the civil law requires it, they require actual tradition, delivery over of the thing. So in all the cases in this court, delivery of the thing given is relied on, and not in the name of the thing. * * * Yet," he added, "notwithstanding, delivery of the key of bulky goods, where wines, &c., are, has been allowed as delivery of the possession, because it is the way of coming at the possession or to make use of the thing."

Although this doctrine has received general approval in the courts of England and of this country, yet some divergence has taken place respecting the facts which may constitute the delivery required. For the purpose of giving effect to the difference mentioned by Lord Hardwicke between articles that were bulky and those that were not, it was usually stated in the earlier cases that the delivery must be according to the nature of the thing given, such as the thing was reasonably capable of, while in later cases, as if ignoring the ground of the distinction, it has often been asserted that the situation as well as the nature of the thing must be taken into consideration, and only such delivery was requisite as, under all the circumstances, the donor could conveniently make. On this footing, it has in some instances been adjudged that delivery of the key was sufficient delivery for a valid donation *mortis causa* of money or documents locked in a trunk or other receptacle, not within the presence or immediate control of the donor, and not otherwise transferred to the possession of the donee. *Cooper* v. *Burr,* 45 *Barb.* 9; *Marsh* v. *Fuller,* 18 *N. H.* 360; *Jones* v. *Brown,* 34 *Id.* 439; *Thomas* v. *Lewis,* 89 *Va.* 1; *Phipard* v. *Phipard,* 8 *N. Y. Sup.* 728; *Pink* v. *Church,* 14 *Id.* 337.

That in this respect these cases depart from the view intended to be expressed in the leading case is, I think, manifest by noticing Lord Hardwicke's comment on *Jones* v. *Selby, Prec. Ch.* 289, and his ruling in *Smith* v. *Smith,* 2 *Str.* 955.

In Jones *v.* Selby the donor had called his cousin, who was his housekeeper, and two of his servants, and said : " I give to my cousin, Mrs. Wetherley, *this* hair trunk and all that is contained in it," and delivered her the key thereof; and, on the strength of this, Mrs. Wetherley claimed a £500 tally as part of the contents of the trunk. This claim was allowed by the Master of the Rolls as a valid *donatio mortis causa,* and would have been allowed by Lord Chancellor Cowper on appeal, except for lack of full proof that the tally was in the trunk at the time, and his conclusion that the gift was satisfied by a legacy to the donee given in a will subsequently made by the donor. On this, Lord Hardwicke's comment was : " The only case wherein such a symbol seems to have been held good is Jones *v.* Selby, but I am of opinion that amounted to the same thing as delivery of the possession of the tally, provided it was in the trunk at the time." He thus seems to state that, with regard to the tally, the key was but a symbol, the delivery of which he had just declared to be insufficient, but that the circumstances showed a delivery of the trunk, and consequently of the tally if in the trunk.

*Smith* v. *Smith,* 2 *Str.* 955, was a ruling at Nisi Prius, where the plaintiff's intestate, having lodgings in the defendant's house, had brought there furniture and plate, and had said that whatever he brought into those lodgings he did not intend to take away, but gave directly to defendant's wife. Whenever he went out of town, he used to leave the key of his lodgings with the defendant. He having died, probably out of town (*Bunn* v. *Markham,* 7 *Taunt.* 224), Lord Hardwicke, then Chief Justice, permitted the jury to find a valid gift. This ruling accords with the view expressed in the leading case, upon the idea that the things given were too bulky for actual delivery, otherwise than by leaving them in the defendant's house and giving him the key of the rooms.

The same distinction is clearly noted in *Hatch* v. *Atkinson,* 56 *Me.* 324, and other cases.

The opinion that delivery of a key is equivalent to the delivery of documents locked up under the key, is not at all

supported by the views announced in such cases as *Hawkins*
v. *Blewitt*, 2 *Esp.* 663; *Bunn* v. *Markham*, 7 *Taunt.* 224,
and *Warriner* v. *Rogers*, L. R., 16 *Eq.* 340, where the reten-
tion of the key by the donor was deemed to negative the
claim of a gift, for, to constitute a gift, there must be, besides
delivery of the thing, an intention to transfer to the donee
complete dominion over it, and the withholding of the key
proved that no such intention existed, notwithstanding the
fact of delivery.

Nor is that opinion, in its general form, fully sustained by
cases like *Debinson* v. *Emmons*, 158 *Mass.* 592, where the
receptacle was in the immediate presence and control of the
parties, in a room occupied by the donee as well as the donor,
and where the only external sign of the exclusive possession
of the receptacle was the actual possession of the key. Under
such circumstances, tradition of the key might be considered
tantamount to tradition of the receptacle and its contents,
without giving the same force to the tradition of the key,
when the receptacle was away from the presence of the parties
and in the actual possession of a third person.

We are not willing to approve the extreme views which
have been adopted in the cases cited. We agree with the
sentiment expressed in *Ridden* v. *Thrall*, 125 *N. Y.* 572,
that "public policy requires that the laws regulating gifts
*causa mortis* should not be extended, and that the range of
such gifts should not be enlarged." When it is remembered
that these gifts come into question only after death has closed
the lips of the donor; that there is no legal limit to the amount
which may be disposed of by means of them; that millions of
dollars' worth of property are locked up in vaults the keys
of which are carried in the owners' pockets, and that, under
the rule applied in those cases, such wealth may be transferred
from the dying owner to his attendant, provided the latter
will take the key and swear that it was delivered to him by
the deceased for the purpose of giving him the contents of the
vault, the dangerous character of the rule becomes conspicu-
ous. Around every other disposition of the property of the

dead, the legislative power has thrown safeguards against fraud and perjury. Around this mode the requirement of actual delivery is the only substantial protection, and the courts should not weaken it by permitting the substitution of convenient and easily-proven devices.

We think the trial justice properly decided that the evidence would not warrant the jury in finding such a delivery as is essential to a donation *mortis causa.*

Nor was there any error in his ruling that the plaintiff had no title under the will of her father. That instrument made the estate of each of his daughters indefeasible upon her arriving at the age of twenty-three years. Only in case she died before that period and without issue was there a gift over to her surviving sister. *Van Houghton* v. *Pennington,* 4 *Halst. Ch.* 745.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, LIPPINCOTT, REED, VAN SYCKEL, BOGERT, KRUEGER, PHELPS, SMITH. 10.

*For reversal*—ABBETT. 1.