Buecker *v.* Carr.

---

GEORGE H. BUECKER

*v.*

MARY CARR et al.

[Filed August 21st, 1900.]

1. One who claims title to property by gift *mortis causa,* must prove the fact of the gift and that it had the characteristics of such a donation.

2. Mere possession of the subject-matter of the claimed gift by the supposed donee, will not, of itself, establish a gift *mortis causa.*

3. Such gifts are not favored in the law, and cannot be proven by violent inference from disputed testimony.

4. Where an administrator appointed by foreign letters seeks a remedy in this court, an attack on his standing on the ground that his decedent was domiciled elsewhere than in the place where his letters issued, will not be entertained. Such objections must be raised in the probate courts by direct attack or application.

5. One who is neither a creditor, next of kin nor in any other way interested in a decedent's estate, may not question the efficiency of letters of administration, valid on their face.

6. The filing of an exemplified copy of foreign letters of administration under the act of 1896 (*P. L. of 1896 p. 173 § 1*) to enable a suit to be prosecuted, is sufficient if filed before final hearing.

7. *Quære.* Is the statute of 1887 (*Gen. Stat. p. 1429 § 20*) repealed by the statute of 1896 above cited?

---

On cross-bill and answer thereto, and proofs.

This cause came on for hearing on the cross-bill filed by Charles J. Costello, administrator, &c., of Hannah McFadden. The original bill in this cause was filed to foreclose a mortgage for $1,000 made by Mary Carr and others to Hannah McFadden, in her lifetime, upon property in Atlantic City. The original bill alleges that on the 27th day of December, 1898, Hannah McFadden, the mortgagee, departed this life intestate, and that prior to her death, and while in her last illness, and apprehension of death was near, to wit, on the 26th day of December, 1898, she, the said Hannah McFadden, gave to the complainant and delivered into his possession the bond and mortgage, &c., with the purpose that the said delivery or possession, &c., should operate as an assignment of all her right and interest therein. Mr. Buecker files the original bill, claiming to be the holder and owner of the bond and mortgage, and makes the Carrs, who were the mortgagors, defendants, and also makes defendant one Charles J. Costello, who is alleged to be a nephew and one of the next of kin of the decedent, Hannah McFadden, and prays the ordinary foreclosure decree, that the complainant may be paid the amount of the mortgage and interest, or sale, &c.

Pending the suit the defendant Costello, who had been appointed administrator of the estate of the decedent, Hannah McFadden, by the register of wills of the city of Philadelphia, filed his petition in the cause, alleging that Buecker, the complainant in the original suit, had obtained possession of the bond

and mortgage sought to be foreclosed, unlawfully, and without right, and that they belonged to the estate of the said Hannah McFadden, of which the petitioner had been appointed administrator, and asked leave, as administrator of Hannah McFadden, to be admitted to set up this defence. He was admitted on this petition, as defendant, as administrator of the defendant, Hannah McFadden. Upon being so admitted, Costello, as administrator, &c., filed his answer to the original bill of complaint, denying the allegations of the complainant that the bond and mortgage had been delivered to him *donatio causa mortis,* as claimed in the original bill, and alleging that the said bond and mortgage remained part of the estate of the said Hannah McFadden at her death, and that they now belonged to him, Charles J. Costello, as administrator of her estate. By way of cross-bill annexed to the answer, Costello, as administrator of Miss McFadden, further restated his averment that the mortgage had not been by Miss McFadden transferred to Beucker *donatio causa mortis,* but that it remained her property at the time of her death, and constituted a part of her estate, and prayed a decree that the complainant in the original bill (Buecker) might be directed to deliver over to him (Costello), as administrator of Miss McFadden, the bond and mortgage in question as part of her estate. Buecker answered the cross-bill denying its allegations. The cause was referred and was ripe for hearing on both the original bill and the cross-bill, but Buecker, the complainant in the original bill, declined to move his case. Costello, administrator of Miss McFadden, complainant in the cross-bill, then moved a hearing of the cause on the cross-bill and answer thereto, and no sufficient reason appearing why the motion should not be granted, the cause has come to a hearing on the cross-bill, and the answer of Buecker to the same.

*Mr. Ulysses G. Styron,* and *Mr. Jonas Miller,* for the complainant in the original bill and defendant in the cross-bill.

*Mr. Herbert A. Drake* and *Mr. Edgar N. Black* (of the Philadelphia bar), for the complainant in the cross-bill and for defendant Costello in the original bill.

Grey, V. C.

The question presented for determination on the issues raised by the cross-bill and the answer thereto, involves simply the ownership of the bond and mortgage sought to be foreclosed.

Both parties claim to own that bond and mortgage, and also to have derived their ownership from the same source—Miss McFadden, the mortgagee. Neither side denies that she was in her lifetime the owner of the bond and mortgage in question, and that she continued to be the owner of it up to the day of her death. There is no claim that she ever executed any written assignment of it, nor that she was in any way dispossessed of the ownership and actual custody, unless title and ownership passed to the complainant, Mr. Buecker, in the mode described in his answer to the cross-bill; that is, that Miss McFadden, on the day of her death, either by absolute gift, or by way of *donatio mortis causa,* passed the bond and mortgage to Mr. Buecker. If she did not so transfer the bond and mortgage to him, then she must have died possessed of them, and their present ownership must be in her administrator.

This issue is thus sharply defined in the pleadings themselves, for the complainant in the cross-bill asserts that she died possessed of the bond and mortgage, and that the defendant, Mr. Buecker, carried them off immediately after her death. The defendant denies this and avers

"that the said bond and mortgage was acquired by him and came to his possession by gift and delivery from the said Hannah McFadden in her lifetime, at the time and in the manner stated in the bill of complaint."

Upon looking at the bill (the original bill), it is there alleged by Mr. Buecker that

"prior to her death and while in her last illness and apprehensive that death was near, to wit, on or about the 26th day of December, 1898, the said Hannah McFadden gave to your orator and delivered into his possession the said bond or obligation and indenture of mortgage, with the intent and purpose that the said delivery of the possession of the said bond and mortgage to your orator shall operate as an assignment and transfer to him of the same and of all her right, title and interest therein."

It is to be noted that there is no claim made that the bond and mortgage were purchased by Mr. Buecker. He alleges, and has offered proof, and his counsel has argued his cause, wholly upon the theory that his recipiency of the bond and mortgage was without valuable consideration, *donatio mortis causa.*

There is a difference between an absolute gift and one made *mortis causa.* In the former case the donee becomes, in the lifetime of the donor, the absolute owner of the thing given, but *donatio mortis causa* leaves the whole title in the donor, unless the event occurs (the death of the donor) which is to divest him. *Edwards* v. *Jones, 1 Myl. & C. 233.* In this case no nice distinction need be made as to the nature of the alleged gift, as the case is controlled by the absence of any proof of any sort of gift.

The bond and mortgage in question were admittedly on the day of Miss McFadden's death in her possession. The whole claim of Mr. Buecker, that the bond and mortgage were given to him by Miss McFadden, is based upon two points in the evidence which, he insists, exhibit such circumstances that a gift *mortis causa* must be inferred. The first incident is that Mr. Buecker, by his own testimony, proves that during the morning of the day on which she died, he came to Miss McFadden's sick chamber in the absence of her attendant. This, it is contended, shows the opportunity for the gift. The second incident is that a witness (a friend of Mr. Buecker) proves that at about six o'clock in the evening of the same day, Buecker showed him the bond and mortgage which he then had in his possession

This, it is contended, shows that Miss McFadden, at the alleged private interview with Mr. Buecker in the morning, must have given him the bond and mortgage which he had in the early evening. Miss McFadden died late that night.

Taking all the above recited testimony to be uncontradicted, it is to be observed it makes no proof whatever that Miss McFadden in any way transferred the bond and mortgage to Mr. Buecker, by way of gift, *mortis causa,* or otherwise. The most that can be said of it is that it exhibits a situation in which she might have made a gift of them to Mr. Buecker, but it falls far short of proving that she did make such a gift. The actual proof, accepting all of it as true, amounts only to a showing that Buecker

Buecker *v.* Carr.

had the securities in his possession during her lifetime. When he got them, by what act or speech of Miss McFadden, whether by gift or how otherwise, and under what circumstances or limitations, is wholly undisclosed by any evidence offered by him. Mr. Buecker, therefore, contends that an irresistible inference must be drawn from the mere fact of his possession of these securities, which shall be held to establish a gift to him by Miss McFadden at the alleged private interview.

It appears to be entirely settled that mere possession of the subject-matter of the gift by the claiming donee, cannot of itself be held to establish a gift *mortis causa.* Especially if the claimant had opportunity to obtain wrongful possession from the alleged donor. There must be proof that the subject-matter of the gift was so delivered to the claimant by the donor himself, by action, or speech, or both, that he abandoned all dominion over it, subject only to the happening of any of the incidents which make such gifts revocable. *Delmotte* v. *Taylor, 1 Redf. Surr. 417.* Should mere possession be held to establish such gift and to cast upon the representatives of the estate the burden of disproof, it would be adding a new terror to death, an actual invitation to the seizure of the effects of sick persons, in *articulo mortis,* when they are least able to care for them.

The policy of the law tends directly in the opposite direction. Gifts *mortis causa* are not favored in the law, for the reason that this mode of disposition permits property without limit of value to be transferred by mere delivery, and the proof thereof to be made when death has closed the lips of the claimed donor. *Keepers* v. *Fidelity Title Co., 27 Vr. 308 (Court of Errors).*

The same principle prevents the drawing of so violent an inference upon evidence of the light character here submitted. Moreover, an inference of such a gift could not be supported upon that evidence, because the possession of Mr. Buecker, under the circumstances detailed, does not either necessarily or even reasonably lead to such a conclusion. If possession was in fact received by Mr. Buecker from Miss McFadden, and the proof stopped at that point, it would still fail to show what is alleged, that under an apprehension of death, and with an intent to give the property in the bond and mortgage to him, she delivered,

20

&c. She might have delivered them to him for safe keeping, for transmission to some other person, indeed, for many reasons other than as a gift to him of the property in them.

But the evidence upon which Mr. Buecker bases his contention cannot be accepted as a truthful statement of the manner in which he obtained possession, without assignment of the securities in question. The testimony, so far as it was given by Mr. Buecker that he had a private interview with Miss McFadden at which the gift might have been made, is flatly contradicted by her attendant, a disinterested witness. That given by his friend, to the effect that in the early evening of the night on which Miss McFadden died Mr. Buecker had the bond and mortgage in his possession, was so uncertain in its identification of the papers, which Buecker showed him as the bond and mortgage here in dispute, that it carries no weight.

There is an entire failure to prove that Miss McFadden, in her lifetime, in any way disposed of the bond and mortgage in question. This determination leaves the title to them in Miss McFadden, at the time of her death, so that it vested in her administrator upon his appointment. Mr. Costello, the complainant in the cross-bill, is that administrator, and as such is entitled to a decree for the delivery of this part of his decedent's estate to him.

This view of the case relieves from any necessity to consider the question of the liability of such a voluntary gift as is claimed to the debts of the decedent, and the consequent right of Miss McFadden's administrator to have the custody and use of these assets, if necessary, for that purpose. Under the proofs the administrator of Miss McFadden is entitled to these securities, not for a limited use to pay her debts, if need be, but without limit, for all the purposes of administration of her estate.

At the hearing it was insisted for Mr. Buecker that he had a right to dispute in this cause the efficiency of Mr. Costello's letters of administration upon Miss McFadden's estate, upon the ground that Miss McFadden was at the time of her death domiciled, not in Philadelphia, where the letters were issued, but in Atlantic City, New Jersey. This contention was overruled. Mr. Buecker was not shown to be either a creditor or

next of kin to Miss McFadden, or to be in any way so interested that he had any *status* to contest with her administrator the legality of his letters.   Nor would this court in this collateral way entertain such a question.   It is one which should be raised in the probate courts, by direct attack or application.   They have jurisdiction over such matters.

Mr. Buecker further contends that Costello, being an administrator by virtue of letters obtained in another state, his cross-bill ought to be dismissed because on coming in as a party he filed the exemplified copy of his letters in the office of the clerk of this court, in this cause, under the provision of the act of 1887 (*Gen. Stat. p. 1429 § 20*), and not in the office of the register of the prerogative court, as provided in *P. L. of 1896 p. 73 § 1.*

Mr. Costello did file an exemplified copy of the foreign letters in this court, in this cause, with his original petition to be admitted to defend this suit as administrator.   This was a full compliance with the terms prescribed by the statute of 1887 above cited.   The act of 1896 does not in terms refer to or repeal the act of 1887, but declares a repealer of all acts and parts of acts inconsistent with the later act.   Whether a requirement that a copy of letters be filed in the office of the clerk of the court where he is about to proceed by suit is inconsistent with another requirement that a copy be filed in the office of the register of the prerogative court is a question of some doubt.   In this case copies have in fact been filed in both offices before the final hearing of the cause—in the office of the clerk of this court, at the original admission of the administrator as a party, and in the prerogative court office about two months before the hearing.   Mr. Buecker's objection is not that the letters are not now on file in the proper office, but that they were not so on file when the cross-bill was filed.

If it be assumed that the statute of 1887 was repealed by the act of 1896, Mr. Costello claims that he has also complied with the requirements of the later statute.   The act of 1896 contemplates and authorizes both the "prosecution" of an action, provided copy of foreign letters be filed, and the "bringing" of an action after such filing.   A suit may be prosecuted after it has

been begun, but the bringing of a suit is its initiation. The one phrase applies to the further conduct of a suit and the other to the beginning of a new suit. The legislature, it is to be presumed, intended each phrase to have its distinct meaning, else there was no occasion to use both. Applying this rule of construction to the act of 1896, it authorizes the prosecution of a pending suit after filing copy of foreign letters in the prerogative office of this state. This the administrator has done before the hearing in the cause, and the requirements of the statute having been complied with, he may now prosecute his suit. The object of the statute of 1896 is to assure defendants that a party assuming to be an administrator under a foreign appointment was in fact what he claimed to be.

This object, so far as the defendant is concerned, is fully attained by the filing of the exemplified copy at any stage of a pending suit, at which he may assert his rights to the assurance. The statute of 1896 prescribes no penalty, and the exemplified copy of the letters being now on file in the prerogative office, the cross-bill should not, even if the act of 1887 was repealed by that of 1896, be dismissed because the copy of foreign letters was not filed in that office before the filing of the cross-bill.

I will advise a decree for the administrator of Miss McFadden, in accordance with the views above expressed, with costs.