## Otto Snyder

*v.*

## Edward P. Harris.

[Filed February 7th, 1901.]

1. To make a witness incompetent to testify to a transaction with, or a statement by, a decedent, he must have been a party to the suit when objection was made to his testimony on such points. If he were not a party when such testimony was given, it cannot be stricken out in case he afterwards becomes a party.

2. A person who is presently entitled to substantially all of the benefits of a foreclosure suit if it be successful, ought to be made a party complainant.

3. If such a person be not made a party to the suit, in order that he may prove a transaction with a decedent which he could not do if he were a party, and his secret interest only appears in his cross-examination, his testimony is seriously discredited. His conduct is an imposition upon the court.

4. A *donatio causa mortis* should be proved by testimony which satisfies the court that there was an actual gift of the property in question by the decedent while under an apprehension of death.

On bill, answer, cross-bill and answers thereto, and proofs.

*Mr. William J. Thompson, Mr. Ulysses G. Styron* and *Mr. Jonas S. Miller,* for the complainant.

*Mr. William M. Clevenger,* for the defendant Edward P. Harris, the mortgagor, and George B. Harris, the grantee of the mortgagor.

*Mr. Herbert A. Drake,* and *Mr. Edgar N. Black* (of the Philadelphia bar), for the defendant Charles J. Costello, as administrator and next of kin of Hannah McFadden, deceased.

Snyder *v.* Harris.

GREY, V. C. (orally).

This cause has been argued in part on one day and in part on another, with very full citations of authorities. I have not only heard the testimony, but have had an opportunity to read some considerable part of it, which has been written out by the stenographer. I think I can state my conclusions now quite as fully as if I gave the matter further investigation.

The litigation now coming to a close in this case was begun by the filing of a bill of complaint by one Otto Snyder, to foreclose a mortgage made by Edward P. Harris to Hannah McFadden, dated the 26th day of July, 1897, to secure the payment of $1,000, upon lands situated in Atlantic City.

The plaintiff (Snyder) alleges in his bill that on or about the 27th day of December, 1897, Miss McFadden, the mortgagee, being in her last illness, gave the mortgage *causa mortis* to one George M. Beucker, and delivered it into his possession, with the bond accompanying the same. It charges that that delivery into his possession, though unaccompanied by any written or other assignment than delivery, passed the title to the said Beucker. The bill further alleges an assignment by Beucker of the bond and mortgage to Snyder, the complainant in this suit.

The bill then proceeds to set out the claims of the various defendants against the mortgaged premises, and calls in as defendant one Charles J. Costello, who, the bill says, claims to be administrator of Hannah McFadden, and to have some interest in the bond and mortgage. There was an error made in the original bill in asserting that Edward P. Harris was the owner of the equity of redemption. This was corrected by subsequent amendment, by which George B. Harris, who, before the filing of the bill, had, by purchase from Edward, become the owner of the equity of redemption, was brought in as defendant. The litigation proceeded as against the parties to the bill, and an answer was filed by Mr. Costello, administrator of Hannah McFadden, accompanied by a cross-bill. In his answer he denies the transmission of the bond and mortgage by *donatio causa mortis* from Miss McFadden to Mr. Beucker, and in his cross-bill he alleges that the bond and mortgage were taken by Mr.

31

Beucker, without authority or right, the day after Miss McFadden died, and prays that it may be delivered to him as part of Miss McFadden's estate. In this situation of the case, Snyder, the complainant, was claiming from the mortgagor the payment of the mortgage, and demanding a sale of the mortgaged premises. Costello was also claiming from the mortgagor payment of the mortgage in his right as administrator of Miss McFadden, and asserting that he was the owner of the mortgage, and that it ought to be delivered to him.

George B. Harris, the owner of the equity of redemption, then filed an answer and cross-bill, in the nature of an interpleader, in which he set up the conflicting claims of these opposing parties to the bond and mortgage, and stated that he was entirely willing to pay the mortgage-money, but he could not, with safety, determine their conflicting claims, and pay it to either, and asked to have his rights protected by a decree that the contesting parties settle their claims by interpleading. Some litigation was had between George B. Harris, on the one side, and Costello, on the other, as to the right of the former to maintain his cross-bill of interpleader. That has been heard. · It was determined that Harris had a right to be protected against the conflicting claims of these two parties, and he was dismissed upon paying the mortgage-money into court. That money now stands in the place of the mortgaged premises, and the litigation has proceeded since that time between the complainant (Snyder), claiming to be the owner of the mortgage, on the one hand, and Charles J. Costello, the administrator of Hannah McFadden, claiming to be the owner of the mortgage, on the other hand.

A very considerable amount of testimony has been taken (which was let in because it might possibly be useful), some of it of quite doubtful admissibility, but the case can be determined without reference to hearsay testimony, or to the declarations of Miss McFadden, which were offered on the part of the defendant Costello, going to show that she did not want any of her property to go to Mr. Beucker, and that she was disposed to make a will and give it to Miss Duffey. I shall not depend upon this testimony in arriving at my conclusions. The whole

case, so far as the ownership of this bond and mortgage, or the mortgage-money as it presently stands, depends entirely upon the transactions alleged to have taken place between Miss Mc-Fadden and Mr. Beucker on the morning of December 26th, 1897, the day before she died.

The complainant alleges that those transactions were of such a character as to pass to Mr. Beucker, by *donatio causa mortis,* the ownership of the bond and mortgage. The complainant must therefore undertake the responsibility of affirmatively showing that condition of facts by a preponderance of proof.

There is but a single witness who attempts to prove that there was any gift by Miss McFadden to Mr. Beucker of the bond and mortgage now in suit. This is Mr. Beucker himself. He testifies that on the morning of December 26th, 1897, he called on Miss McFadden, in her sick-room; that Miss Duffey, her attendant nurse was there, but that during Miss Duffey's temporary absence, while he and Miss McFadden were alone together, she told him to get her cabba, which he handed to her, and that she took from it the bond and mortgage in question, and also another one, and gave them to him. No other witness even claims to have any knowledge that there was any such gift by Miss McFadden to Mr. Beucker. Of course, no witness could contradict Mr. Beucker's statement that there was a gift *mortis causa,* because the alleged gift is stated by Mr. Beucker to have been made to him by Miss McFadden at a time and place and under such circumstances that no other person than himself could have any knowledge on the subject, Miss McFadden being now dead.

The testimony of Mr. Beucker is sought to be sustained by two witnesses. One, a Mr. Moffit, who testified that Mr. Beucker brought to him on the evening of December 26th, a package of papers for safekeeping, and among them the bond and mortgage in question. The whole significance of this testimony was to show that Beucker had the bond and mortgage in his possession on the evening of the 26th, the day he claims Miss McFadden gave it to him, and while she was yet alive, for she died about one o'clock in the early morning of the 27th. This witness Moffit had no acquaintance whatever with the bond and mort-

gage in question—he had no reason to notice it. He did not examine or unfold the papers, but claims, by a mere glance at them, to have so noticed them that he can, with certainty, a long while afterwards, identify them. His testimony, if true, would support Mr. Beucker's testimony, not absolutely, but only to a slight extent. It would not show at all that Miss McFadden gave the bond and mortgage to Beucker. But the testimony of the witness Moffit was neither in the manner of its delivery nor in the matter of its statement satisfactory to show even an indentification of this bond and mortgage. He was not one who was in any way familiar with such papers; he had no interest in them. The fixing of the time of the exhibition of the bond and mortgage to Moffit on December 26th was essential to give any value to his testimony, for, on the defendants' theory, which I shall shortly refer to, it is claimed that Beucker took them from Miss McFadden's cabba on December 27th, the next day. So that, if he gave them to Moffit on the evening of December 27th, instead of the 26th, the latter's testimony is of no aid to Beucker's claim that the mortgage was given him by Miss Mc-Fadden on the morning of the 26th. Mr. Moffit's testimony fixing the date on December 26th, after several years had elapsed, appeared to be an arbitrary selection of a convenient date, rather than a recollection of a remembered day. His manner when on the stand was quite uncertain and unimpressive.

Another witness, a Mrs. Robinson, called by the defendants, is claimed to support Mr. Beucker's story that Miss McFadden gave him the bond and mortgage. It was in Mrs. Robinson's house that Miss McFadden was living. Mrs. Robinson testified that there was a period of time when Mr. Beucker was alone with Miss McFadden in her room. Mrs. Robinson did not say that she saw Mr. Beucker alone with Miss McFadden in her room, and she knew nothing of the alleged gift. She appears to have inferred, from the circumstances, that she saw Miss Duffey, Miss McFadden's attendant, out of the room; that there was a period of time when Mr. Beucker was in the room alone with Miss McFadden. Of course, such testimony does not prove a gift; it simply suggests a possible opportunity for a gift by Miss McFadden when no one was present but Beucker. The

corroboration thus offered of Mr. Beucker's testimony is of the very least possible weight.

The defendants claim that they show the testimony of Mr. Beucker, as to this gift, to be untrue, by the evidence of Miss Anna Duffey, who was in attendance upon Miss McFadden, as her friend and nurse, and was in Miss McFadden's room, in that capacity, on the 26th day of December, when Mr. Beucker came there. Miss Duffey swears that she was in Miss McFadden's room at the time Beucker arrived, and that she stayed there during the whole period that Mr. Beucker was in the house. She claims that she was in attendance upon Miss McFadden during the whole time that Mr. Beucker was in her room, and that no such transaction as is detailed by Mr. Beucker either did happen or could have taken place.

Miss Duffey's testimony, though necessarily negative in character, is in direct contradiction of the private interview narrated by Mr. Beucker, and if she is accurate, it must be held to refute his whole story of the gift *mortis causa*. Miss Duffey further states that on the morning of December 27th, after Miss McFadden's death, Mr. Beucker came to Miss McFadden's room and asked for the cabba containing the latter's papers. From this cabba, while open on Miss Duffey's lap, Mr. Beucker took a package of papers. Miss Duffey could not, with certainty, identify them as the bond and mortgage in question. Mr. Beucker himself admits that, on the morning of December 27th, he did take from Miss McFadden's cabba, while it was on Miss Duffey's lap, some papers, but he claims they were certificates, which he wished to use to secure the services of the undertaker. This testimony is not without significance. Both parties appear to admit that Miss McFadden kept the bond and mortgage in her cabba. Beucker says that he, at her direction, took the bond and mortgage from this cabba on December 26th. If he did not, he certainly had the opportunity to take it from the same cabba on December 27th, and if he did then take them, this would account for his subsequent actual possession of these papers.

Miss Duffey is entirely disinterested in this case. She was in actual charge of Miss McFadden in her sick-room, at the time

when the events in question must have taken place; it is in every way probable that she would have remained in actual attendance, as she swears she did, upon her sick friend during Mr. Beucker's visit. Her testimony is attacked as influenced by pique or envy, but there was nothing, in either the matter or the manner of it, which indicated that she was actuated by any such feeling.

These narrations of circumstances, which, while not directly contradictory, are yet irreconcilable with each other—create a situation in which it is of the utmost importance to ascertain what value should be given to the testimony of Mr. Beucker, because on that, and that alone, if a decree is to be made in favor of the complainant in this case, must such a determination depend.

The court of errors and appeals, in the case of *Keepers* v. *Fidelity Trust and Deposit Co., 27 Vr. 308,* in discussing the decisions of other states, in which gifts of this character have been received with considerable favor, or at least indulgence, says:

"We agree with the sentiments expressed in *Ridden* v. *Thrall, 125 N. Y. 572,* that 'public policy requires that the law regulating gifts *causa mortis* should not be extended, and the range of such gifts should not be enlarged.' When it is remembered that these gifts come into question only after death has closed the lips of the donor; that there is no legal limit to the amount which may be disposed of by means of them; that millions of dollars' worth of property are locked up in vaults, the keys of which are carried in the owners' pockets, and that, under the rule applied in those cases, such wealth may be transferred from the dying owner to his attendant, provided the latter will take the key and swear that it was delivered to him by the deceased for the purpose of giving him the contents of the vault, the dangerous character of the rule becomes conspicuous."

In this cause, upon the sole testimony of Mr. Beucker, a gift *mortis causa* of a bond and mortgage is attempted to be shown. His testimony, therefore, must be examined with a very careful scrutiny to see whether it is of such a credible character, and from such a disinterested standpoint, that this court ought, upon

his testimony alone, to decree a change of ownership in a thousand dollars' worth of property.

There are many elements in this case which have led me to doubt the sincerity and truth of Mr. Beucker's testimony.  In the first place, Mr. Beucker's manner on the stand was not satisfactory.  He created no belief that he was testifying under a conscious recollection of facts which his memory recalled.  It is necessary, in order to maintain the complainant's case, that not only a gift of the property should be shown, but also, in support of both the allegation and argument for the plaintiff, that it was a gift *mortis causa,* and it must be proven, as an incident of such a gift, that it was made in apprehension of death.  Mr. Beucker, was called for the purpose of proving this fact.  He was the only person present when the alleged gift was made, and must have known what inducements operated upon Miss McFadden to make it.  It required about three and a half pages of questions of the most leading character to induce Mr. Beucker to state, as he finally did, that Miss McFadden, at the time of giving him the bond and mortgage, did say that she was making the gift in apprehension of her death.  Before Mr. Beucker's examination was concluded it was drawn from him, on cross-examination, that he is himself the person who is substantially interested in the success of the complainant in this cause.  His assignment of the bond and mortgage to Mr. Snyder, the nominal complainant, was shown to have been made without any consideration passing to him (Mr. Beucker).  It was made to secure the payment of a debt of less than twenty dollars, owed by Beucker to Snyder.  Mr. Snyder, the ostensible or nominal complainant in this case, has, therefore, an interest of but $20 in this suit, while Mr. Beucker, though the fact is not disclosed in the bill of complaint, is, in fact, interested to the extent of all the rest of the mortgage-money.  Practically, he has an interest of at least nine hundred dollars in this suit.

The assignment of the bond and mortgage by Beucker to Snyder was not claimed by Beucker, in his testimony, to have been a sale.  It was simply an assignment to Mr. Snyder, because Beucker owed him $20.  The inference is, therefore, irresistible that all that is due upon the bond and mortgage, above $20,

is to come to Mr. Beucker himself. He is really, therefore, in the position of a complainant. Not on the record, but going behind the record, to the real facts of the case, this bond and mortgage is being foreclosed, though in the name of Snyder, as complainant, for the benefit of Mr. Beucker. He testified that he made this assignment under advice of his attorney, and it may fairly be believed that this was not done in ignorance of the fact that if Mr. Beucker had filed this bill in his own name, the law of this state would have excluded him from the witness-stand to prove Miss McFadden's *donatio causa mortis*. But the bill of complaint having been filed in the name of Snyder, the statute of 1880 (which excludes parties to the suit from giving testimony as to transactions with, or statements by, decedents, where defendants are sued in a representative capacity) did not apply to exclude Mr. Beucker, because he was not himself a party to the record.

It was moved that Beucker be made a party, and that his testimony as to transactions with, and statements by, Miss McFadden be stricken from the evidence, and under ordinary conditions it would have been required that he be made a party. But this motion was made after his testimony had been taken, and would not have excluded it. He was a competent witness when his testimony was given, and his subsequent introduction as a party would not make it inadmissible, though he might thereafter have been incompetent. *Beckhaus* v. *Ladner, 3 Dick. Ch. Rep. 161.* The hearing in this cause might have been so conducted as to have excluded the testimony of Mr. Beucker as to his transaction with Miss McFadden. He might have been cross-examined, at the opening of his examination in chief, as to his interest. If this disclosed his substantial ownership of the mortgage, it might then have been required that he should be brought in as a party to the record. In the case of *Tyson* v. *Applegate, 13 Stew. Eq. 305,* the court of appeals held that all persons interested in the proceeds of a mortgage foreclosure (unless the number was so great that it was impossible practically to bring them in) must be parties. It is the established practice in this state that *cestui que trustent* of the mortgage-moneys must be parties. That is Mr. Beucker's position—the

mortgage being foreclosed is to be collected, in great part, for his benefit. If he had thus been made a party before he had testified he could hot have given evidence as to transactions with, or statements by, Miss McFadden, whose representative was a party defendant.

Although Mr. Beucker's testimony as to transactions with Miss McFadden cannot, for the reasons stated, be stricken from the record, it is a very different matter when this situation of affairs is suggested as affecting his credibility as a witness. He comes upon the stand, in truth, the claimant of substantially all of this mortgage-money, without disclosing that fact until it is wrung from him at the tail-end of his cross-examination. He is the real complainant, but puts Mr. Snyder forward as the apparent complainant, in order that he (Beucker) may go upon the stand as a witness and give testimony which he could not have given had his real relation to the case been previously disclosed. He attended every one of the several days of the hearing, appearing to be the actually interested complainant; Mr. Snyder not appearing at all. Such conduct throws serious doubts upon a story, already doubtful, as narrated by him.

There is another phase of this dispute which discredits Mr. Beucker's story. The transaction whereby Mr. Beucker claims to have obtained possession of this mortgage by Miss McFadden's gift took place on the 26th day of December, 1897. Shortly after that date the attorney for Mr. Costello claimed a delivery from Mr. Beucker of the property which he had in his possession belonging to Miss McFadden. Mr. Beucker thus knew that there was a claim on the part of the representative of Miss McFadden's estate for this bond and mortgage. This was about ten days after the date on which Mr. Beucker claims they had been given to him, and it would have been entirely natural, if, in fact, there had been such a gift, that Mr. Beucker should, by that time, have asserted it. But Mr. Beucker, in answer to this demand, did not say a word about a gift *mortis causa* of the bond and mortgage, though he was then acting under advice of counsel, nor was the subject of such a gift mentioned until several weeks after Miss McFadden's death.

Another element required in proof of a gift *mortis causa* is

that it be shown that the donor made the gift while under an apprehension of death. Mr. Beucker's own testimony was far and away from showing such a condition. On the contrary, in one part of his testimony, he showed that there was no such apprehension, but that Miss McFadden sat up in bed at the time of the conversation which resulted in the gift of this mortgage, and was looking pretty well. It required, as stated, the most persistent leading questions to induce Mr. Beucker to swear that she apprehended her death at the time of the alleged gift. She was undoubtedly ill, but her extreme illness did not supervene until the evening of December 26th, several hours after the alleged gift.

The defence insists that Mr. Beucker took this bond and mortgage, with another, on December 27th, after Miss McFadden's death, from the cabba where she was in the habit of keeping them, the cabba being then in the actual manual custody of Miss Duffey. The testimony going to identify the bond and mortgage as among the papers then taken is not strong enough, conclusively, to prove that fact, but it does not at all follow that because the defendants do not conclusively show how Mr. Beucker got the bond and mortgage, that he, therefore, got them in the way in which he claims they came to him. The complainant has specifically alleged that the bond and mortgage were given *mortis causa* by Miss McFadden to Mr. Beucker. The testimony offered to support this claim is incredible and insufficient. It was quite within probability that the bond and mortgage were, in fact, taken from the cabba on the morning after Miss McFadden died. All agree that Mr. Beucker then took some papers, the bond and mortgage were usually kept in that cabba whence he took them, and he then certainly had an opportunity to have gotten them into his possession.

For the reasons above indicated, when the essential proofs come from a witness who is the substantial, though concealed, complainant in the cause, who tells a story which, both the manner of telling and in the matter of it, is incredible, I am not satisfied to make a decree that this mortgage passed by gift *mortis causa* from Miss McFadden, in her lifetime, to Mr. George H. Beucker.

When the title of Mr. Beucker is overthrown, it follows, necessarily, that the title of Mr. Snyder, the ostensible complainant in this suit, must go with it. The decree, therefore, should be in favor of the defendant Costello, administrator of Miss McFadden's estate, that the bond and mortgage in question were, at the time of the death of Hannah McFadden, a part of her estate, and that they should be recovered and delivered over to her administrator, the defendant Charles J. Costello, in accordance with the prayer of his cross-bill. But the mortgage, in the present situation of the case, is represented by money in court, which should be decreed to be paid over to the defendant Charles J. Costello, administrator of Miss McFadden.

I will advise such a decree.